UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RUSTY KROUSE and BRENNA KROUSE,      No. 2:10-cv-03309-MCE-EFB

      Plaintiffs,

    v.                                    MEMORANDUM AND ORDER

BAC HOME LOANS SERVICING, LP;
BANK OF AMERICA N.A.; and DOES
1 through 10, inclusive,

      Defendants.

----oo0oo----

    Plaintiffs Rusty Krouse and Brenna Krouse seek redress from Defendants BAC Home Loans Servicing, LP and Bank of America, N.A. ("Defendants" or "BoA") based on claims of breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, violations of the Rosenthal Fair Debt Collection Practices Act, violations of California's Unfair Competition Law, and violations of the Truth-In-Law Lending Act ("TILA") codified at 12 CFR Part 226 ("Regulation Z").[1]

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

1

1    Presently before the Court is Defendants' Motion to Dismiss

2   ("MTD") Plaintiffs' Second Amended Complaint for failure to state

3   a claim upon which relief may be granted pursuant to Federal Rule

4   of Civil Procedure 12(b)(6).[2]

5

6                            **BACKGROUND**[3]

7

8    The Defendants in this matter are in the business of making

9   and servicing home mortgage and deed of trust loans.[4]  This

10   action arises out of a residential loan transaction involving

11   Plaintiffs' real property.  On December 19, 2007, Plaintiffs

12   procured a loan in the amount of $417,000, which was secured by a

13   Promissory Note and a Deed of Trust recorded on December 26,

14   2007.  (MTD at 2).  It is undisputed, that at the closing of the

15   loan transaction, Plaintiffs were provided with the Truth in

16   Lending Act disclosures, explaining the terms of their loan.

17   (MTD at 2.)

18   ///

19   ///

20   ///

21

22      [2] Unless otherwise noted, all further references to Rule or
      Rules are to the Federal Rules of Civil Procedure.

23      [3] The factual assertions in this section are based on the
24   allegations in Plaintiffs' Second Amended Complaint, unless
      otherwise specified.

25      [4] "Mortgage" and "deed of trust" loans are essentially
26   synonymous.  Where they differ is when the loan is defaulted and
      sent to foreclosure.  In a "mortgage," servicers proceed through
      a process called judicial foreclosure.  A "deed of trust"
27   foreclosure requires a third-party trustee to complete the
      foreclosure.  Hereinafter, "mortgage" and "deed of trust" will be
28   used exchangeably.

Furthermore, it is undisputed that On December 19, 2007, Plaintiffs received and signed two Notices of the Right to Cancel ("NRC"), which were intended, among other things, to set out the time reserved for Plaintiffs to rescind the loan agreement.  (MTD at 3.)

In early 2009, Plaintiffs found it difficult to make their obligated deed of trust payments.  As a result, in April 2009, Plaintiffs applied for a loan modification through the Home Affordable Modification Program ("HAMP"), serviced by Bank of America N.A. ("BoA").

HAMP is a key initiative of the Troubled Asset Relief Program ("TARP")-a government program supplying U.S. financial institutions with roughly $700 billion.  The HAMP initiative offers incentive funds to financial institutions for providing mortgage loan modifications to eligible borrowers who are in financial distress.  Defendants are one of many institutions that receive HAMP funds.  Generally speaking, to qualify for a home loan modification under HAMP: (1) the borrower requests HAMP loan modification; (2) the servicer and borrower enter into Trial Period Plan agreement; and (3) based on the borrower's financial information and Net Present Value ("NPV"), servicer will either approve or deny borrower for the HAMP loan modification. If the NPV produces a "negative" result (meaning losses to the servicer from foreclosure are less than losses from modification), the servicer is not obligated to modify the loan. However, under the HAMP guidelines, if the NPV result is positive the servicer is obligated to provide a loan modification.

///

1    In July 2009, after reviewing Plaintiffs' financial
2 information, BoA informed Plaintiffs via a telephone conversation
3 that they had conditionally met the eligibility requirements to
4 qualify for a permanent loan modification under HAMP.  As the
5 Plaintiffs allege, BoA also explained that if the Plaintiffs made
6 three timely trial period plan ("TPP") payments of $2,345, then
7 BoA would provide a permanent loan modification.

8    On August 23, 2009, Plaintiffs received a written, but
9 unsigned, TPP.  The TPP explained how Plaintiffs were required to
10 make three timely TPP payments for the months of August, October,
11 and November 2009.[5]  Plaintiffs thereafter timely made the three
12 TPP payments and continued to make the TPP payments after
13 November 2009.

14    In December 2009, Plaintiffs contacted Defendants and were
15 told they were "still under review" and must continue making
16 payments.  Plaintiffs then received a letter dated December 12,
17 2009, from BoA requesting their tax returns and the most recent
18 profit and loss statement.  Plaintiffs allege the tax returns and
19 similar financial information had previously been submitted to
20 Defendants prior to starting the TPP.

21 ///
22 ///
23 ///
24 ///
25 ///

26

27    [5] The Court did not erroneously omit the month of September.
28 According to the Complaint, the scheduled TPP payments were not
consecutive.  It is unclear why this was the case.

4

1   In early January 2010, Plaintiffs received a letter from BoA
2   requesting tax returns, documentation stating Plaintiffs were not
3   subject to homeowners' association dues, and documentation
4   showing completion of credit counseling.  Again, Plaintiffs claim
5   these documents were already in BoA's custody, but they still
6   produced the documents

7   During the latter part of January 2010, Plaintiffs received
8   a letter from BoA claiming Plaintiffs had not made all necessary
9   TPP payments.  Plaintiffs thereafter requested and received a
10  copy of their loan history from Defendants, which indicated that
11  Plaintiffs made every payment since entering the TPP trial
12  period.

13  The following month, Plaintiffs received another letter from
14  BoA requesting their tax returns.  In lieu of submitting their
15  tax returns for a third time, Plaintiffs called to inquire as to
16  the status of the loan modification, and the purpose of the
17  document request, but did not receive a conclusive answer.

18  Between February and June 2010, Plaintiffs continued to make
19  their TPP payments and communicated with BoA on seven separate
20  occasions.  By phone and in writing, BoA repeatedly assured
21  Plaintiffs that they had satisfied the HAMP requirements and had
22  been approved for the permanent loan modification and that the
23  paperwork would be sent to them in the near future.  They were
24  instructed to continue making the TPP payments while awaiting the
25  loan modification paperwork.  However, the promised paperwork
26  never arrived and, in a call in early June 2010, a BoA
27  representative could not explain why the paperwork had not been
28  sent out.

1    Then, on June 25, 2010, Plaintiffs received a letter from

2  BoA informing them that they had not qualified for a HAMP

3  modification due to a negative NPV result.[6]   Just four days

4  later, on June 29, Plaintiffs contacted BoA by telephone.

5  Contradicting the letter that Plaintiffs had just received, the

6  BoA representative "confirmed" Plaintiffs' loan modification had

7  been approved in February of 2009.

8    Plaintiffs never received the final loan modification

9  documents.  Instead, BoA sent Plaintiffs' file to collection.[7]

10 In all, Plaintiffs allege that they made the three initial TPP

11 payments, as well as eight additional timely TPP payments.

12 Subsequently, Plaintiffs began receiving harassing collection

13 calls and letters.

14    As a result of these events, Plaintiffs claim to have

15 suffered increased loan interest amounts, an extended loan payoff

16 period, a higher principle balance, damage to their credit, and

17 have been deterred from seeking other remedies to address their

18 deed of trust default.

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 

26    [6] _Supra_, note 5.

27    [7] It is unclear why Plaintiffs were considered delinquent
   when they claim to have made at least eleven TPP payments.
28 During the collection process, a BoA collection representative
   informed Plaintiffs that they were eleven payments past due.

1

**STANDARD**

2    **A.   Motion to Dismiss**

3

4        On a motion to dismiss for failure to state a claim under

5    Rule 12(b)(6), all allegations of material fact must be accepted

6    as true and construed in the light most favorable to the

7    nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

8    337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and

9    plain statement of the claim showing that the pleader is entitled

10   to relief" in order to "give the defendant fair notice of what

11   the...claim is and the grounds upon which it rests."  Bell Atl.

12   Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal

13   citations and quotations omitted).  Though "a complaint attacked

14   by a Rule 12(b)(6) motion to dismiss does not need detailed

15   factual allegations, a plaintiff's obligation to provide the

16   'grounds' of his 'entitlement to relief' requires more than

17   labels and conclusions, and a formulaic recitation of the

18   elements of a cause of action will not do."  Id. at 1964-65

19   (internal citations and quotations omitted).  A plaintiff's

20   factual allegations must be enough to raise a right to relief

21   above the speculative level.  Id. at 1965 (citing 5 C. Wright &

22   A. Miller, Federal Practice and Procedure § 1216, pp. 235-36

23   (3d ed. 2004) ("The pleading must contain something

24   more...than...a statement of facts that merely creates a

25   suspicion [of] a legally cognizable right of action")).

26   ///

27   ///

28   ///

7

1    Moreover, "Rule 8(a)(2)...requires a 'showing,' rather than

2  a blanket assertion of entitlement to relief.  Without some

3  factual allegation in the complaint, it is hard to see how a

4  claimant could satisfy the requirements of providing not only

5  'fair notice' of the nature of the claim, but also 'grounds' on

6  which the claim rests."  <u>Twombly</u>, at 1965, n.3 (internal

7  citations omitted).  A pleading must contain "only enough facts

8  to state a claim to relief that is plausible on its face."  <u>Id.</u>

9  at 1960.  If the "plaintiffs...have not nudged their claims

10  across the line from conceivable to plausible, their complaint

11  must be dismissed."  <u>Id.</u>

12    A court granting a motion to dismiss a complaint must then

13  decide whether to grant leave to amend.  Rule 15(a) empowers the

14  court to freely grant leave to amend when there is no "undue

15  delay, bad faith[,] dilatory motive on the part of the

16  movant,...undue prejudice to the opposing party by virtue

17  of...the amendment, [or] futility of the amendment...."  <u>Foman v.

18  Davis</u>, 371 U.S. 178, 182 (1962).  Leave to amend is generally

19  denied when it is clear the deficiencies of the complaint cannot

20  be cured by amendment.  <u>DeSoto v. Yellow Freight Sys., Inc.</u>,

21  957 F.2d 655, 658 (9th Cir. 1992); <u>Balistieri v. Pacifica Police

22  Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990) ("A complaint should not

23  be dismissed under Rule 12(b)(6) unless it appears beyond doubt

24  that the plaintiff can prove no set of facts in support of his

25  claim which would entitle him to relief.") (internal citations

26  omitted).

27  ///

28  ///

1        **CLAIMS AND ANALYSIS**

2   **A.   Breach of Written Contract**

3        **1.   Parties' Claims**

4

5        Plaintiffs allege that, by means of its communications with

6   them regarding the TPP agreement, BoA was contractually obligated

7   by the TPP agreement to provide them with a permanent loan

8   modification.  Plaintiffs assert they performed all of their

9   obligations by paying the monthly TPP payments and by submitting

10  the requested paperwork.

11       Defendants move to dismiss on the basis that the alleged

12  written contract falls under the statute of frauds because it was

13  unsigned.

14

15       **2.   Standard**

16

17       Under California law, a claim for breach of contract

18  requires that a plaintiff demonstrate: (1) the existence of the

19  contract; (2) plaintiff's performance or excuse for

20  nonperformance of the contract; (3) defendant's breach of the

21  contract; and (4) resulting damages.  <u>Armstrong Petrol. Corp. V.</u>

22  <u>Tri Valley Oil & Gas Co.</u>, 116 Cal. App. 4th 1375, 1391 n. 6

23  (2004).  In California, the statute of frauds states that any

24  agreement to purchase real estate secured by a mortgage or deed

25  of trust, which is not reduced to writing, is invalid.

26  ///

27  ///

28  ///

Cal. Civ. Code § 1624(a)(6); <u>Secrest v. Security National</u> <u>Mortgage Loan Trust 2002-2</u>, 167 Cal. App. 4th 544, 552 (2008) ("An agreement for the sale of real property or an interest in real property comes within the statute of frauds").  "A mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property."  Cal. Civ. Code § 2922.  An agreement to modify a contract subject to the statute of frauds is also subject to the statute of frauds.  <u>Secrest</u>, at 553.

### 3.   Analysis

Plaintiffs' breach of written contract claim fails because the alleged contract falls under the doctrine of statute of frauds, and its requirements had not been met.  Here, the alleged contract is the TPP agreement.  Both parties agree the TPP is an agreement that modifies, at least temporarily, the original mortgage agreement.  However, Defendants contend that they never executed the TPP agreement, and therefore the contract is unenforceable under the statute of frauds.

Plaintiffs argue that <u>Doughtry v. California Kettleman Oil</u> <u>Royalties, Inc.</u> prevents Defendants from raising the affirmative defense of statute of frauds where they fully performed their end of the disputed contract.  9 Cal. 2d 58, 81 (1937) (statute of frauds barred where one party fully performs).  However, for this rule to apply, a sufficient change of position has to occur "so that the application of the statutory bar would result in an unjust and unconscionable loss, amounting in effect to fraud."

1  <u>Anderson v. Stansbury</u>, 38 Cal. 2d 707 (1952); <u>see</u> <u>also</u> <u>Secrest</u>,

2  at 556 ("The principle that full performance takes a contract out

3  of the statute of frauds has been limited to the situation where

4  performance consisted of conveying property, rendering personal

5  services, or doing something other than the payment of money.").

6       Plaintiffs allege that as a result of the breach they have

7  suffered increased interest amounts, a longer loan payoff time, a

8  higher principle balance, damage to their credit, and deterrence

9  from seeking other remedies to address their mortgage default.

10 As the <u>Secrest</u> court held, to remove a contract from the purview

11 of statute of frauds the performance must be more than the

12 payment of money.  Here, Plaintiffs suggest that the performance

13 was only the monthly TPP payments and the production of financial

14 documents.  The Court does not find this performance to be of the

15 severity causing Plaintiffs a sufficient change in position to

16 bar the statute of frauds.

17      Accordingly, because the statute of frauds applies, and no

18 claimed exception to the statute have been properly alleged or

19 pled, Plaintiffs' breach of written contract claim is dismissed.

20

21      **B.    Breach of Oral Contract**

22

23      Plaintiffs also allege Defendants breached an oral contract

24 for the TPP loan agreement. Plaintiffs allege that they entered

25 into a binding oral agreement with BoA by phone in July 2009.

26 Plaintiffs claim the oral contract is enforceable because they

27 fully performed in accordance with the express terms of the

28 agreement, therefore barring the statute of frauds.

1    However, this claim also fails because the statute of frauds

2    applies.  Plaintiffs have not sufficiently pled facts

3    demonstrating that any exception to the writing requirement of

4    the statute of frauds applies.

5

6        **C.   Breach of Good Faith And Fair Dealing**

7

8        Plaintiffs claim that Defendants' actions breached

9    California's covenant of good faith and fair dealing.  Defendants

10   move to dismiss on the basis that the covenant only applies under

11   limited circumstances, not present here.

12       The implied covenant of good faith and fair dealing rests

13   upon the existence of some specific contractual obligation.

14   <u>Foley v. Interactive Data Corp.</u>, 7 Cal. 3d 654, 683-84 (1988).

15   The covenant of good faith is read into contracts in order to

16   protect the express covenants or promises of the contract, not to

17   protect some general public policy interest not directly tied to

18   the contract's purpose.  <u>Id.</u> at 690.  "In essence, the covenant

19   is implied as a supplement to the express contractual covenants,

20   to prevent a contracting party from engaging in conduct which

21   frustrates the other party's rights to the benefits of the

22   contract."  <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App. 3d 1136,

23   1153 (1998).

24       Under California law, recovery for breach of the covenant

25   "is available only in limited circumstances, generally involving

26   a special relationship between the contracting parties."  <u>Bionghi</u>

27   <u>v. Metro. Water Dist.</u>, 70 Cal. App. 4th 1358, 1370 (1999).

28   ///

California courts have rejected the argument that the doctrine, which traditionally extends only to unique fiduciary-like relationships, should encompass normal commercial banking transactions.  Mitsui Mfrs. Bank v. Superior Court, 212 Cal. App. 3d 726, 729 (1989).

This Court previously granted Defendant's Motion to Dismiss Plaintiffs' breach of good faith claim because no underlying contract was established.  Again, because Plaintiffs have failed to establish the existence of an enforceable contract, this claim is dismissed.

**D.    Promissory Estoppel**

Plaintiffs contend that Defendants must be estopped from failing to honor the promises made to Plaintiffs regarding the permanent loan modification.  Defendants move to dismiss on the basis that no promise had been made to Plaintiffs regarding a permanent loan modification.

Promissory estoppel makes a "promise binding under certain circumstances, without consideration in the usual sense of something bargained for and something given in exchange."  Garcia v. World-Sav., FSB, 183 Cal. App. 4th 1037, 1040-41 (2010) (citing Youngman v. Nev. Irrigation Dist., 70 Cal. 2d 240, 249 (1969)). If the language or conduct of an individual leads another to act as he or she would not have acted, then he or she should not be denied the "expectations upon which he acted."  Id.

///

///

13

To establish a promissory estoppel claim, three elements must be met:  (1) a clear and unambiguous promise in its terms; (2) reliance that is reasonable and foreseeable; and (3) an injury that results from reliance.  <u>Laks v. Coast Fed. Sav. & Loan Assn.,</u> 60 Cal. App. 3d 885, 890 (1923).

Plaintiffs have pled sufficient factual allegations to support their promissory estoppel claim.  They allege Defendants promised, both orally and in writing, to provide Plaintiffs with a loan modification upon being approved under the HAMP requirements and upon them making timely monthly TPP payments. Plaintiffs allege they were repeatedly assured by BoA that they had satisfied the HAMP requirements, were current with their TPP payments, and would therefore be receiving the loan modification agreement to be signed.  Plaintiffs' reliance on those promises were reasonably foreseeable as they acted in accordance with the express terms of the written TPP, as well as the oral promises. Plaintiffs have also sufficiently alleged injury as a result of the promise made by BoA.  Defendants' Motion to Dismiss Plaintiffs' claim for promissory estoppel is denied.

**E.   The Rosenthal Fair Debt Collection Practices Act**

Plaintiffs allege BoA violated California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA") by making repeated calls and sending multiple letters seeking to collect on the defaulted deed of trust.

///

///

14

1   Defendants move to dismiss Plaintiffs' RFDCPA claim under the

2   theory that BoA is not a "debt collector" as defined by RFDCPA,

3   and that Plaintiffs fail to properly plead BoA used "false,

4   deceptive, or unfair means[,]" as required by RFDCPA (Reply in

5   Support of MTD at 9.)

6       Under RFDCPA, a debt collector is prohibited from collecting

7   or attempting to collect from a debtor in a threatening or

8   harassing manner.  See Cal. Civ. Code § 1788 et seq.  The RFDCPA

9   defines "debt collector" as "any person who in the ordinary

10  course of business, regularly, on behalf of himself or herself or

11  others, engages in debt collection."  Id. § 1788.2(c).

12      Several district courts within the Ninth Circuit have found

13  bank actions to recover on deed of trust defaults not to be "a

14  debt" within the meaning of the RFDCPA.  See, e.g., Grill v. BAC

15  Home Loans Serv. LP, No. 10-CV-03057-FCD/GGH, 2011 WL 127891 at

16  19 (E.D. Cal. Jan. 14, 2011) (citing six California district

17  court cases for this proposition) (internal citations omitted).

18  This Court agrees.  Because this is a deed of trust default, BoA

19  is not collecting a "debt" within the meaning of RFDCPA.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    Furthermore, under the RFDCPA, a mortgage servicing company

2  or any assignee of the debt is not considered a debt collector.

3  Lal v. American Home Servicing, Inc, 680 F. Supp. 2d 1218, 1224;

4  see also Angulo v. Countrywide Home Loans, Inc., No. 1:09-CV-877-

5  AWI-SMS, 2009 WL 3427179, at *5 (E.D. Cal. October 26, 2009)

6  (citations omitted); Morgera v. Countryside Home Loans, Inc.,

7  No. 2:09-CV-01476-MCE-GGH, 2010 WL 160348, at *3 (E.D. Cal

8  Jan. 11, 2010) ("California courts have declined to regard a

9  residential mortgage loan as a 'debt' under the RFDCPA.").  BoA

10  is therefore not a "debt collector" under the RFDCPA.

11    Accordingly, because the alleged foreclosure is not

12  considered a "debt" under RFDCPA, and BoA is not deemed a "debt

13  collector" within the meaning of the statute, Defendants cannot

14  be held liable for the alleged claims.

15    Because no set of facts presented by Plaintiffs will alter

16  the fact that a deed of trust is not a "debt," and BoA is not a

17  "debt collector" for recovering funds from a deed of trust

18  default, this cause of action is dismissed without leave to

19  amend.

20

21    **F.    The California Unfair Competition Law**

22

23    Plaintiffs claim Defendants engaged in unlawful, unfair, and

24  fraudulent acts violating California's Unfair Competition Law

25  ("UCL").  Defendants move to dismiss on the basis that plaintiffs

26  do not plead sufficient facts to support a UCL claim.

27  ///

28  ///

16

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  It allows for plaintiffs to state claims for acts, or practices which are: unlawful, unfair, or fraudulent.  Cal-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).

### 1.   Unlawful Acts or Practices

Any business practice which violates federal, state, or local law is an unlawful business practice under the terms of section 17200.  Durrell v. Sharp Healthcare, 108 Cal. App. 4th 1350, 1361 (2010).  In this Court's previous Order on this matter, Plaintiffs' unlawful business practice claims were dismissed because Plaintiffs failed to allege a violation of federal, state or local law.  Again, because no law has been sufficiently pled as being violated, Plaintiffs' claim fails under this prong of the UCL.

### 2.   Unfair Acts or Practices

To substantiate an unfair acts or practices claim, a Plaintiff must "tether its allegation to a constitutional or statutory provision or regulation carrying out such a statutory policy," Cal-Tech Comms., at 180 (1999); Lozano v. AT&T Wireless Servs., 504 F.3d 718 (9th Cir. 2007), or show that the harm caused outweighs the utility of the Defendants' practices.  Lozano, at 735.

1    Plaintiffs have neither "tethered" their claim to a

2    constitutional or statutory provision or regulation carrying out

3    a statutory policy, nor have they shown how any alleged harm

4    outweighs the utility of the Defendants' practice.

5

6                    **3.    Fraudulent Acts or Practices**

7

8    Allegations of fraud implicate Rule 9(b)'s heightened

9    pleading standard.  Rule 9(b) requires Plaintiffs alleging fraud

10   to "state with particularity the circumstances constituting fraud

11   or mistake."  In explaining Rule 9(b), the Ninth Circuit has said

12   that "to avoid dismissal for inadequacy under Rule 9(b), [the]

13   complaint would need to state the time, place, and specific

14   content of the false representations as well as the identities of

15   the parties to the misrepresentation."  <u>Edwards v. Marin Park,</u>

16   <u>Inc.</u>, 356 F.3d 1058, 1066 (9th Cir. 2004) (citations omitted).

17   Although plaintiffs allege facts establishing time, place,

18   and identifying the parties to various statements, they fail to

19   provide details involving the specific false statements they

20   allege.  For example, Plaintiffs assert the legal conclusion that

21   "[BoA] has made misrepresentations and omissions of material

22   fact," without directing the Court to a time, statement, or

23   person, relevant to the misrepresentation.  (SAC ¶ 147.)

24   Plaintiffs also do not state what the actual misrepresentations

25   and omissions allegedly were.  (SAC ¶ 147.)

26   Accordingly, Defendants' Motion to Dismiss Plaintiffs' UCL

27   claim is granted.

28   ///

1        **G.    Truth In Lending Act and Regulation Z**

2

3        Plaintiffs allege BoA violated the Truth In Lending Act by

4  "failing to deliver to Plaintiffs two copies of the notice of

5  right to cancel that clearly and conspicuously disclosed the date

6  of the [initial deed of trust] transaction and the date the

7  rescission period expired."  (SAC ¶ 156.) Plaintiffs go on to

8  allege that "the notices of right to cancel that Plaintiffs

9  received were materially defective in that they did not indicate

10 the final date to rescind the loan."  (Id.) Plaintiffs contend,

11 that as a result of receiving defective forms, Plaintiffs have

12 the right to rescind their initial deed of trust agreement.

13 Defendants move to dismiss on the basis that Plaintiffs did

14 receive a proper and conspicuously disclosed Notice of Right to

15 Cancel ("NRC").

16       TILA mandates that borrowers be given three business days to

17 rescind, without penalty, a consumer loan that uses their

18 principle dwelling as security.  15 U.S.C. § 1635(a).  If the

19 lender does not comply with TILA's disclosure requirements, the

20 rescission period is extended to three years. 15 U.S.C.

21 § 1635(f).  The disclosure requirements at issue here are:

22 (1) that creditors must provide each borrower two NRCs within

23 three days of the transactions' execution, 12 C.F.R. 226.15(b);

24 and (2) that the NRC identify when the cancellation period

25 expires. Id.

26 ///

27 ///

28 ///

1    It is undisputed that, on December 19, 2007, Plaintiffs
2 received and signed an NRC identifying both the date of the
3 transaction and the period of rescission.  Defendants have
4 attached a copy of the NRC to their Motion to Dismiss.
5 Plaintiffs do not dispute its validity.

6    The NRC states, "You have a legal right under federal law to
7 cancel this transaction, without cost, within THREE BUSINESS
8 DAYS..." of whichever occurs last: (1) the date of the
9 transaction (December 19, 2007); (2) the date Plaintiffs received
10 the TILA; or (3) the date Plaintiffs received the NRC.  (Defs.'
11 MTD Exh. 2(D).)  Therefore, contrary to their claims, Plaintiffs
12 did receive proper notification of a notice to cancel and the
13 period of rescission and there is no claim or evidence that they
14 exercised their right to cancel.

15    Additionally, TILA furnishes a roster of transactions to
16 which the disclosure requirements do not apply, which include:

17    (1) a residential mortgage transaction...; [and]

18    (2) a transaction which constitutes a refinancing or
19    consolidation (with no new advances) of the principle
     balance then due and any accrued and unpaid finance
     charges of an existing extension of credit by the same
20    creditor secured by an interest in the same property[.]

21 15 U.S.C. § 1635(e)(1)-(2).

22    A "residential mortgage transaction," for purposes of the
23 first exemption is defined as, "a transaction in which a
24 mortgage, deed of trust, purchase money security interest arising
25 under an installment sales contract, or equivalent consensual
26 security interest is created or retained against the consumer's
27 dwelling to finance the acquisition or initial construction of
28 such dwelling." 15 U.S.C. § 1602.

1  Plaintiff argues that the transaction at issue was neither made
2  to acquire or to construct Plaintiffs' residence, barring this
3  exemption.  However, Plaintiffs have failed to assert the true
4  nature of the loan at issue, forcing the Court to guess its
5  purpose.  This Court will not take part in guessing games and
6  does not accept Plaintiffs' conclusory allegations.

7      As to the refinancing exemption, Plaintiffs again claim the
8  transaction at hand falls outside of the exemption.  However, as
9  explained above, this Court cannot ascertain the nature of the
10 loan.  Because the Court cannot decipher from the pleading what
11 the nature of the loan was, and because Plaintiffs have not
12 sufficiently alleged that the NRC must apply or that the TILA
13 exemptions do not apply, Plaintiffs' claim for violation of TILA
14 is dismissed.

15

16                            **CONCLUSION**

17

18      As a matter of law, and for the reasons set forth above,
19 Defendants' Motion to Dismiss is GRANTED in part and DENIED in
20 part.

21      Defendants' Motion to Dismiss is GRANTED without leave to
22 amend with respect to Plaintiffs' Rosenthal Fair Debt Collection
23 Practice Act cause of action.

24 ///
25 ///
26 ///
27 ///
28 ///

                               21

1    Defendants' Motion to Dismiss is also GRANTED with respect

2  to Plaintiffs' cause of action for breach of written and oral

3  contract; breach of good faith and fair dealing; violations of

4  the Rosenthal Fair Debt Collection Practices Act; violations of

5  California's Unfair Competition Law; and Violations of Truth-In-

6  Lending Act and Regulation Z.  Plaintiffs are given final leave

7  to amend for these causes of action.  Any such amendment must be

8  filed within twenty (20) days of the date this Order is

9  electronically filed.  No further amendments will be permitted

10  thereafter.

11    Defendants' Motion to Dismiss is DENIED as to Plaintiffs'

12  promissory estoppel cause of action.

13    IT IS SO ORDERED.

14
   Dated: December 5, 2011

15

16

17                          MORRISON C. ENGLAND, JR.
                           UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28