1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10  RUSTY KROUSE and BRENNA KROUSE,      No. 2:10-cv-03309-MCE-EFB

11          Plaintiffs,

12       v.                             MEMORANDUM AND ORDER

13  BAC HOME LOANS SERVICING, LP;
    BANK OF AMERICA N.A.; and DOES
14  1 through 10, inclusive,

15          Defendants.

16
                         ----oo0oo----
17

18       Plaintiffs Rusty Krouse and Brenna Krouse seek redress from

19  Defendants BAC Home Loans Servicing, LP and Bank of America, N.A.

20  ("Defendants" or "BoA") based on claims of breach of contract,

21  breach of implied covenant of good faith and fair dealing,

22  promissory estoppel, violations of the Rosenthal Fair Debt

23  Collection Practices Act, violations of California's Unfair

24  Competition Law, and violations of the Truth-In-Law Lending Act

25  ("TILA") codified at 12 CFR Part 226 ("Regulation Z").[1]

26

27       [1] Because oral argument will not be of material assistance,
    the Court orders this matter submitted on the briefs.  E.D. Cal.
28  Local Rule 78-230(h).

                                1

1    Presently before the Court is Defendants' Motion to Dismiss

2  ("MTD") Plaintiffs' Second Amended Complaint for failure to state

3  a claim upon which relief may be granted pursuant to Federal Rule

4  of Civil Procedure 12(b)(6).[2]

5

6                          **BACKGROUND**[3]

7

8    The Defendants in this matter are in the business of making

9  and servicing home mortgage and deed of trust loans.[4]  This

10 action arises out of a residential loan transaction involving

11 Plaintiffs' real property.  On December 19, 2007, Plaintiffs

12 procured a loan in the amount of $417,000, which was secured by a

13 Promissory Note and a Deed of Trust recorded on December 26,

14 2007.  (MTD at 2).  It is undisputed, that at the closing of the

15 loan transaction, Plaintiffs were provided with the Truth in

16 Lending Act disclosures, explaining the terms of their loan.

17 (MTD at 2.)

18 ///

19 ///

20 ///

21 ──────────────

22    [2] Unless otherwise noted, all further references to Rule or
   Rules are to the Federal Rules of Civil Procedure.

23    [3] The factual assertions in this section are based on the
24 allegations in Plaintiffs' Second Amended Complaint, unless
   otherwise specified.

25    [4] "Mortgage" and "deed of trust" loans are essentially
26 synonymous.  Where they differ is when the loan is defaulted and
   sent to foreclosure.  In a "mortgage," servicers proceed through
27 a process called judicial foreclosure.  A "deed of trust"
   foreclosure requires a third-party trustee to complete the
28 foreclosure.  Hereinafter, "mortgage" and "deed of trust" will be
   used exchangeably.

1  Furthermore, it is undisputed that On December 19, 2007,
2  Plaintiffs received and signed two Notices of the Right to Cancel
3  ("NRC"), which were intended, among other things, to set out the
4  time reserved for Plaintiffs to rescind the loan agreement.  (MTD
5  at 3.)

6      In early 2009, Plaintiffs found it difficult to make their
7  obligated deed of trust payments.  As a result, in April 2009,
8  Plaintiffs applied for a loan modification through the Home
9  Affordable Modification Program ("HAMP"), serviced by Bank of
10 America N.A. ("BoA").

11      HAMP is a key initiative of the Troubled Asset Relief
12 Program ("TARP")-a government program supplying U.S. financial
13 institutions with roughly $700 billion.  The HAMP initiative
14 offers incentive funds to financial institutions for providing
15 mortgage loan modifications to eligible borrowers who are in
16 financial distress.  Defendants are one of many institutions that
17 receive HAMP funds.  Generally speaking, to qualify for a home
18 loan modification under HAMP: (1) the borrower requests HAMP loan
19 modification; (2) the servicer and borrower enter into Trial
20 Period Plan agreement; and (3) based on the borrower's financial
21 information and Net Present Value ("NPV"), servicer will either
22 approve or deny borrower for the HAMP loan modification. If the
23 NPV produces a "negative" result (meaning losses to the servicer
24 from foreclosure are less than losses from modification), the
25 servicer is not obligated to modify the loan. However, under the
26 HAMP guidelines, if the NPV result is positive the servicer is
27 obligated to provide a loan modification.
28 ///

1    In July 2009, after reviewing Plaintiffs' financial
2 information, BoA informed Plaintiffs via a telephone conversation
3 that they had conditionally met the eligibility requirements to
4 qualify for a permanent loan modification under HAMP.  As the
5 Plaintiffs allege, BoA also explained that if the Plaintiffs made
6 three timely trial period plan ("TPP") payments of $2,345, then
7 BoA would provide a permanent loan modification.

8    On August 23, 2009, Plaintiffs received a written, but
9 unsigned, TPP.  The TPP explained how Plaintiffs were required to
10 make three timely TPP payments for the months of August, October,
11 and November 2009.[5]  Plaintiffs thereafter timely made the three
12 TPP payments and continued to make the TPP payments after
13 November 2009.

14    In December 2009, Plaintiffs contacted Defendants and were
15 told they were "still under review" and must continue making
16 payments.  Plaintiffs then received a letter dated December 12,
17 2009, from BoA requesting their tax returns and the most recent
18 profit and loss statement.  Plaintiffs allege the tax returns and
19 similar financial information had previously been submitted to
20 Defendants prior to starting the TPP.

21 ///
22 ///
23 ///
24 ///
25 ///

26

27    [5] The Court did not erroneously omit the month of September.
   According to the Complaint, the scheduled TPP payments were not
28 consecutive.  It is unclear why this was the case.

4

1    In early January 2010, Plaintiffs received a letter from BoA
2  requesting tax returns, documentation stating Plaintiffs were not
3  subject to homeowners' association dues, and documentation
4  showing completion of credit counseling.  Again, Plaintiffs claim
5  these documents were already in BoA's custody, but they still
6  produced the documents

7    During the latter part of January 2010, Plaintiffs received
8  a letter from BoA claiming Plaintiffs had not made all necessary
9  TPP payments.  Plaintiffs thereafter requested and received a
10  copy of their loan history from Defendants, which indicated that
11  Plaintiffs made every payment since entering the TPP trial
12  period.

13    The following month, Plaintiffs received another letter from
14  BoA requesting their tax returns.  In lieu of submitting their
15  tax returns for a third time, Plaintiffs called to inquire as to
16  the status of the loan modification, and the purpose of the
17  document request, but did not receive a conclusive answer.

18    Between February and June 2010, Plaintiffs continued to make
19  their TPP payments and communicated with BoA on seven separate
20  occasions.  By phone and in writing, BoA repeatedly assured
21  Plaintiffs that they had satisfied the HAMP requirements and had
22  been approved for the permanent loan modification and that the
23  paperwork would be sent to them in the near future.  They were
24  instructed to continue making the TPP payments while awaiting the
25  loan modification paperwork.  However, the promised paperwork
26  never arrived and, in a call in early June 2010, a BoA
27  representative could not explain why the paperwork had not been
28  sent out.

1    Then, on June 25, 2010, Plaintiffs received a letter from
2  BoA informing them that they had not qualified for a HAMP
3  modification due to a negative NPV result.[6]  Just four days
4  later, on June 29, Plaintiffs contacted BoA by telephone.
5  Contradicting the letter that Plaintiffs had just received, the
6  BoA representative "confirmed" Plaintiffs' loan modification had
7  been approved in February of 2009.

8    Plaintiffs never received the final loan modification
9  documents.  Instead, BoA sent Plaintiffs' file to collection.[7]
10 In all, Plaintiffs allege that they made the three initial TPP
11 payments, as well as eight additional timely TPP payments.
12 Subsequently, Plaintiffs began receiving harassing collection
13 calls and letters.

14    As a result of these events, Plaintiffs claim to have
15 suffered increased loan interest amounts, an extended loan payoff
16 period, a higher principle balance, damage to their credit, and
17 have been deterred from seeking other remedies to address their
18 deed of trust default.

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25
   ---
         [6] <u>Supra</u>, note 5.
26
         [7] It is unclear why Plaintiffs were considered delinquent
27 when they claim to have made at least eleven TPP payments.
   During the collection process, a BoA collection representative
28 informed Plaintiffs that they were eleven payments past due.

1

**STANDARD**

2

**A.    Motion to Dismiss**

3

4        On a motion to dismiss for failure to state a claim under

5    Rule 12(b)(6), all allegations of material fact must be accepted

6    as true and construed in the light most favorable to the

7    nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

8    337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and

9    plain statement of the claim showing that the pleader is entitled

10    to relief" in order to "give the defendant fair notice of what

11    the...claim is and the grounds upon which it rests." Bell Atl.

12    Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal

13    citations and quotations omitted).  Though "a complaint attacked

14    by a Rule 12(b)(6) motion to dismiss does not need detailed

15    factual allegations, a plaintiff's obligation to provide the

16    'grounds' of his 'entitlement to relief' requires more than

17    labels and conclusions, and a formulaic recitation of the

18    elements of a cause of action will not do." Id. at 1964-65

19    (internal citations and quotations omitted).  A plaintiff's

20    factual allegations must be enough to raise a right to relief

21    above the speculative level.  Id. at 1965 (citing 5 C. Wright &

22    A. Miller, Federal Practice and Procedure § 1216, pp. 235-36

23    (3d ed. 2004) ("The pleading must contain something

24    more...than...a statement of facts that merely creates a

25    suspicion [of] a legally cognizable right of action")).

26    ///

27    ///

28    ///

1    Moreover, "Rule 8(a)(2)...requires a 'showing,' rather than
2    a blanket assertion of entitlement to relief.  Without some
3    factual allegation in the complaint, it is hard to see how a
4    claimant could satisfy the requirements of providing not only
5    'fair notice' of the nature of the claim, but also 'grounds' on
6    which the claim rests."  Twombly, at 1965, n.3 (internal
7    citations omitted).  A pleading must contain "only enough facts
8    to state a claim to relief that is plausible on its face."  Id.
9    at 1960.  If the "plaintiffs...have not nudged their claims
10   across the line from conceivable to plausible, their complaint
11   must be dismissed."  Id.

12        A court granting a motion to dismiss a complaint must then
13   decide whether to grant leave to amend.  Rule 15(a) empowers the
14   court to freely grant leave to amend when there is no "undue
15   delay, bad faith[,] dilatory motive on the part of the
16   movant,...undue prejudice to the opposing party by virtue
17   of...the amendment, [or] futility of the amendment...."  Foman v.
18   Davis, 371 U.S. 178, 182 (1962).  Leave to amend is generally
19   denied when it is clear the deficiencies of the complaint cannot
20   be cured by amendment.  DeSoto v. Yellow Freight Sys., Inc.,
21   957 F.2d 655, 658 (9th Cir. 1992); Balistieri v. Pacifica Police
22   Dept., 901 F.2d 696, 699 (9th Cir. 1990) ("A complaint should not
23   be dismissed under Rule 12(b)(6) unless it appears beyond doubt
24   that the plaintiff can prove no set of facts in support of his
25   claim which would entitle him to relief.") (internal citations
26   omitted).

27   ///
28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLAIMS AND ANALYSIS**

**A.   Breach of Written Contract**

    **1.   Parties' Claims**

Plaintiffs allege that, by means of its communications with them regarding the TPP agreement, BoA was contractually obligated by the TPP agreement to provide them with a permanent loan modification.  Plaintiffs assert they performed all of their obligations by paying the monthly TPP payments and by submitting the requested paperwork.

Defendants move to dismiss on the basis that the alleged written contract falls under the statute of frauds because it was unsigned.

    **2.   Standard**

Under California law, a claim for breach of contract requires that a plaintiff demonstrate: (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance of the contract; (3) defendant's breach of the contract; and (4) resulting damages.  <u>Armstrong Petrol. Corp. V. Tri Valley Oil & Gas Co.</u>, 116 Cal. App. 4th 1375, 1391 n. 6 (2004).  In California, the statute of frauds states that any agreement to purchase real estate secured by a mortgage or deed of trust, which is not reduced to writing, is invalid.

///

///

///

9

1  Cal. Civ. Code § 1624(a)(6); <u>Secrest v. Security National</u>
2  <u>Mortgage Loan Trust 2002-2</u>, 167 Cal. App. 4th 544, 552 (2008)
3  ("An agreement for the sale of real property or an interest in
4  real property comes within the statute of frauds").  "A mortgage
5  can be created, renewed, or extended, only by writing, executed
6  with the formalities required in the case of a grant of real
7  property."  Cal. Civ. Code § 2922.  An agreement to modify a
8  contract subject to the statute of frauds is also subject to the
9  statute of frauds.  <u>Secrest</u>, at 553.

10
11         **3.   Analysis**
12

13         Plaintiffs' breach of written contract claim fails because
14  the alleged contract falls under the doctrine of statute of
15  frauds, and its requirements had not been met.  Here, the alleged
16  contract is the TPP agreement.  Both parties agree the TPP is an
17  agreement that modifies, at least temporarily, the original
18  mortgage agreement.  However, Defendants contend that they never
19  executed the TPP agreement, and therefore the contract is
20  unenforceable under the statute of frauds.
21         Plaintiffs argue that <u>Doughtry v. California Kettleman Oil</u>
22  <u>Royalties, Inc.</u> prevents Defendants from raising the affirmative
23  defense of statute of frauds where they fully performed their end
24  of the disputed contract.  9 Cal. 2d 58, 81 (1937) (statute of
25  frauds barred where one party fully performs).  However, for this
26  rule to apply, a sufficient change of position has to occur "so
27  that the application of the statutory bar would result in an
28  unjust and unconscionable loss, amounting in effect to fraud."

1  Anderson v. Stansbury, 38 Cal. 2d 707 (1952); see also Secrest,

2  at 556 ("The principle that full performance takes a contract out

3  of the statute of frauds has been limited to the situation where

4  performance consisted of conveying property, rendering personal

5  services, or doing something other than the payment of money.").

6       Plaintiffs allege that as a result of the breach they have

7  suffered increased interest amounts, a longer loan payoff time, a

8  higher principle balance, damage to their credit, and deterrence

9  from seeking other remedies to address their mortgage default.

10 As the Secrest court held, to remove a contract from the purview

11 of statute of frauds the performance must be more than the

12 payment of money.  Here, Plaintiffs suggest that the performance

13 was only the monthly TPP payments and the production of financial

14 documents.  The Court does not find this performance to be of the

15 severity causing Plaintiffs a sufficient change in position to

16 bar the statute of frauds.

17      Accordingly, because the statute of frauds applies, and no

18 claimed exception to the statute have been properly alleged or

19 pled, Plaintiffs' breach of written contract claim is dismissed.

20

21      **B.    Breach of Oral Contract**

22

23      Plaintiffs also allege Defendants breached an oral contract

24 for the TPP loan agreement. Plaintiffs allege that they entered

25 into a binding oral agreement with BoA by phone in July 2009.

26 Plaintiffs claim the oral contract is enforceable because they

27 fully performed in accordance with the express terms of the

28 agreement, therefore barring the statute of frauds.

11

1    However, this claim also fails because the statute of frauds

2    applies.  Plaintiffs have not sufficiently pled facts

3    demonstrating that any exception to the writing requirement of

4    the statute of frauds applies.

5

6    **C.   Breach of Good Faith And Fair Dealing**

7

8    Plaintiffs claim that Defendants' actions breached

9    California's covenant of good faith and fair dealing.  Defendants

10   move to dismiss on the basis that the covenant only applies under

11   limited circumstances, not present here.

12   The implied covenant of good faith and fair dealing rests

13   upon the existence of some specific contractual obligation.

14   Foley v. Interactive Data Corp., 7 Cal. 3d 654, 683-84 (1988).

15   The covenant of good faith is read into contracts in order to

16   protect the express covenants or promises of the contract, not to

17   protect some general public policy interest not directly tied to

18   the contract's purpose.  Id. at 690.  "In essence, the covenant

19   is implied as a supplement to the express contractual covenants,

20   to prevent a contracting party from engaging in conduct which

21   frustrates the other party's rights to the benefits of the

22   contract."  Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136,

23   1153 (1998).

24   Under California law, recovery for breach of the covenant

25   "is available only in limited circumstances, generally involving

26   a special relationship between the contracting parties."  Bionghi

27   v. Metro. Water Dist., 70 Cal. App. 4th 1358, 1370 (1999).

28   ///

12

California courts have rejected the argument that the doctrine, which traditionally extends only to unique fiduciary-like relationships, should encompass normal commercial banking transactions. <u>Mitsui Mfrs. Bank v. Superior Court</u>, 212 Cal. App. 3d 726, 729 (1989).

This Court previously granted Defendant's Motion to Dismiss Plaintiffs' breach of good faith claim because no underlying contract was established. Again, because Plaintiffs have failed to establish the existence of an enforceable contract, this claim is dismissed.

**D.    Promissory Estoppel**

Plaintiffs contend that Defendants must be estopped from failing to honor the promises made to Plaintiffs regarding the permanent loan modification. Defendants move to dismiss on the basis that no promise had been made to Plaintiffs regarding a permanent loan modification.

Promissory estoppel makes a "promise binding under certain circumstances, without consideration in the usual sense of something bargained for and something given in exchange." <u>Garcia v. World-Sav., FSB</u>, 183 Cal. App. 4th 1037, 1040-41 (2010) (citing <u>Youngman v. Nev. Irrigation Dist.</u>, 70 Cal. 2d 240, 249 (1969)). If the language or conduct of an individual leads another to act as he or she would not have acted, then he or she should not be denied the "expectations upon which he acted." <u>Id.</u>

///

///

1      To establish a promissory estoppel claim, three elements

2   must be met:  (1) a clear and unambiguous promise in its terms;

3   (2) reliance that is reasonable and foreseeable; and (3) an

4   injury that results from reliance.  Laks v. Coast Fed. Sav. &

5   Loan Assn., 60 Cal. App. 3d 885, 890 (1923).

6      Plaintiffs have pled sufficient factual allegations to

7   support their promissory estoppel claim.  They allege Defendants

8   promised, both orally and in writing, to provide Plaintiffs with

9   a loan modification upon being approved under the HAMP

10  requirements and upon them making timely monthly TPP payments.

11  Plaintiffs allege they were repeatedly assured by BoA that they

12  had satisfied the HAMP requirements, were current with their TPP

13  payments, and would therefore be receiving the loan modification

14  agreement to be signed.  Plaintiffs' reliance on those promises

15  were reasonably foreseeable as they acted in accordance with the

16  express terms of the written TPP, as well as the oral promises.

17  Plaintiffs have also sufficiently alleged injury as a result of

18  the promise made by BoA.  Defendants' Motion to Dismiss

19  Plaintiffs' claim for promissory estoppel is denied.

20

21      **E.    The Rosenthal Fair Debt Collection Practices Act**

22

23      Plaintiffs allege BoA violated California's Rosenthal Fair

24  Debt Collection Practices Act ("RFDCPA") by making repeated calls

25  and sending multiple letters seeking to collect on the defaulted

26  deed of trust.

27  ///

28  ///

14

1  Defendants move to dismiss Plaintiffs' RFDCPA claim under the
2  theory that BoA is not a "debt collector" as defined by RFDCPA,
3  and that Plaintiffs fail to properly plead BoA used "false,
4  deceptive, or unfair means[,]" as required by RFDCPA (Reply in
5  Support of MTD at 9.)

6      Under RFDCPA, a debt collector is prohibited from collecting
7  or attempting to collect from a debtor in a threatening or
8  harassing manner.  <u>See</u> Cal. Civ. Code § 1788 <u>et seq</u>.  The RFDCPA
9  defines "debt collector" as "any person who in the ordinary
10 course of business, regularly, on behalf of himself or herself or
11 others, engages in debt collection."  <u>Id</u>. § 1788.2(c).

12     Several district courts within the Ninth Circuit have found
13 bank actions to recover on deed of trust defaults not to be "a
14 debt" within the meaning of the RFDCPA.  <u>See</u>, <u>e.g.</u>, <u>Grill v. BAC</u>
15 <u>Home Loans Serv. LP</u>, No. 10-CV-03057-FCD/GGH, 2011 WL 127891 at
16 19 (E.D. Cal. Jan. 14, 2011) (citing six California district
17 court cases for this proposition) (internal citations omitted).
18 This Court agrees.  Because this is a deed of trust default, BoA
19 is not collecting a "debt" within the meaning of RFDCPA.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1    Furthermore, under the RFDCPA, a mortgage servicing company
2 or any assignee of the debt is not considered a debt collector.
3 <u>Lal v. American Home Servicing, Inc</u>, 680 F. Supp. 2d 1218, 1224;
4 <u>see also</u> <u>Angulo v. Countrywide Home Loans, Inc.</u>, No. 1:09-CV-877-
5 AWI-SMS, 2009 WL 3427179, at *5 (E.D. Cal. October 26, 2009)
6 (citations omitted); <u>Morgera v. Countryside Home Loans</u>, <u>Inc.</u>,
7 No. 2:09-CV-01476-MCE-GGH, 2010 WL 160348, at *3 (E.D. Cal
8 Jan. 11, 2010) ("California courts have declined to regard a
9 residential mortgage loan as a 'debt' under the RFDCPA.").  BoA
10 is therefore not a "debt collector" under the RFDCPA.

11    Accordingly, because the alleged foreclosure is not
12 considered a "debt" under RFDCPA, and BoA is not deemed a "debt
13 collector" within the meaning of the statute, Defendants cannot
14 be held liable for the alleged claims.

15    Because no set of facts presented by Plaintiffs will alter
16 the fact that a deed of trust is not a "debt," and BoA is not a
17 "debt collector" for recovering funds from a deed of trust
18 default, this cause of action is dismissed without leave to
19 amend.

20
21    **F.    The California Unfair Competition Law**
22
23    Plaintiffs claim Defendants engaged in unlawful, unfair, and
24 fraudulent acts violating California's Unfair Competition Law
25 ("UCL").  Defendants move to dismiss on the basis that plaintiffs
26 do not plead sufficient facts to support a UCL claim.
27 ///
28 ///

1    The UCL defines unfair competition as "any unlawful, unfair
2  or fraudulent business act or practice."  Cal. Bus. & Prof. Code
3  § 17200.  It allows for plaintiffs to state claims for acts, or
4  practices which are: unlawful, unfair, or fraudulent.  Cal-Tech
5  Commc'ns., Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180
6  (1999).

7

8             1.    **Unlawful Acts or Practices**

9

10    Any business practice which violates federal, state, or
11  local law is an unlawful business practice under the terms of
12  section 17200.  Durrell v. Sharp Healthcare, 108 Cal. App. 4th
13  1350, 1361 (2010).  In this Court's previous Order on this
14  matter, Plaintiffs' unlawful business practice claims were
15  dismissed because Plaintiffs failed to allege a violation of
16  federal, state or local law.  Again, because no law has been
17  sufficiently pled as being violated, Plaintiffs' claim fails
18  under this prong of the UCL.

19

20             2.    **Unfair Acts or Practices**

21

22    To substantiate an unfair acts or practices claim, a
23  Plaintiff must "tether its allegation to a constitutional or
24  statutory provision or regulation carrying out such a statutory
25  policy," Cal-Tech Comms., at 180 (1999); Lozano v. AT&T Wireless
26  Servs., 504 F.3d 718 (9th Cir. 2007), or show that the harm
27  caused outweighs the utility of the Defendants' practices.
28  Lozano, at 735.

1    Plaintiffs have neither "tethered" their claim to a

2  constitutional or statutory provision or regulation carrying out

3  a statutory policy, nor have they shown how any alleged harm

4  outweighs the utility of the Defendants' practice.

5

6              **3.    Fraudulent Acts or Practices**

7

8    Allegations of fraud implicate Rule 9(b)'s heightened

9  pleading standard.  Rule 9(b) requires Plaintiffs alleging fraud

10  to "state with particularity the circumstances constituting fraud

11  or mistake."  In explaining Rule 9(b), the Ninth Circuit has said

12  that "to avoid dismissal for inadequacy under Rule 9(b), [the]

13  complaint would need to state the time, place, and specific

14  content of the false representations as well as the identities of

15  the parties to the misrepresentation."  <u>Edwards v. Marin Park,</u>

16  <u>Inc.</u>, 356 F.3d 1058, 1066 (9th Cir. 2004) (citations omitted).

17    Although plaintiffs allege facts establishing time, place,

18  and identifying the parties to various statements, they fail to

19  provide details involving the specific false statements they

20  allege.  For example, Plaintiffs assert the legal conclusion that

21  "[BoA] has made misrepresentations and omissions of material

22  fact," without directing the Court to a time, statement, or

23  person, relevant to the misrepresentation.  (SAC ¶ 147.)

24  Plaintiffs also do not state what the actual misrepresentations

25  and omissions allegedly were.  (SAC ¶ 147.)

26    Accordingly, Defendants' Motion to Dismiss Plaintiffs' UCL

27  claim is granted.

28  ///

1  **G.   Truth In Lending Act and Regulation Z**

2

3      Plaintiffs allege BoA violated the Truth In Lending Act by
4  "failing to deliver to Plaintiffs two copies of the notice of
5  right to cancel that clearly and conspicuously disclosed the date
6  of the [initial deed of trust] transaction and the date the
7  rescission period expired."  (SAC ¶ 156.) Plaintiffs go on to
8  allege that "the notices of right to cancel that Plaintiffs
9  received were materially defective in that they did not indicate
10 the final date to rescind the loan." (Id.) Plaintiffs contend,
11 that as a result of receiving defective forms, Plaintiffs have
12 the right to rescind their initial deed of trust agreement.
13 Defendants move to dismiss on the basis that Plaintiffs did
14 receive a proper and conspicuously disclosed Notice of Right to
15 Cancel ("NRC").

16     TILA mandates that borrowers be given three business days to
17 rescind, without penalty, a consumer loan that uses their
18 principle dwelling as security.  15 U.S.C. § 1635(a).  If the
19 lender does not comply with TILA's disclosure requirements, the
20 rescission period is extended to three years. 15 U.S.C.
21 § 1635(f).  The disclosure requirements at issue here are:
22 (1) that creditors must provide each borrower two NRCs within
23 three days of the transactions' execution, 12 C.F.R. 226.15(b);
24 and (2) that the NRC identify when the cancellation period
25 expires. Id.

26 ///

27 ///

28 ///

19

1   It is undisputed that, on December 19, 2007, Plaintiffs

2   received and signed an NRC identifying both the date of the

3   transaction and the period of rescission.  Defendants have

4   attached a copy of the NRC to their Motion to Dismiss.

5   Plaintiffs do not dispute its validity.

6   The NRC states, "You have a legal right under federal law to

7   cancel this transaction, without cost, within THREE BUSINESS

8   DAYS..." of whichever occurs last: (1) the date of the

9   transaction (December 19, 2007); (2) the date Plaintiffs received

10  the TILA; or (3) the date Plaintiffs received the NRC.  (Defs.'

11  MTD Exh. 2(D).)  Therefore, contrary to their claims, Plaintiffs

12  did receive proper notification of a notice to cancel and the

13  period of rescission and there is no claim or evidence that they

14  exercised their right to cancel.

15  Additionally, TILA furnishes a roster of transactions to

16  which the disclosure requirements do not apply, which include:

17  (1) a residential mortgage transaction...; [and]

18  (2) a transaction which constitutes a refinancing or
    consolidation (with no new advances) of the principle
19  balance then due and any accrued and unpaid finance
    charges of an existing extension of credit by the same
20  creditor secured by an interest in the same property[.]

21  15 U.S.C. § 1635(e)(1)-(2).

22  A "residential mortgage transaction," for purposes of the

23  first exemption is defined as, "a transaction in which a

24  mortgage, deed of trust, purchase money security interest arising

25  under an installment sales contract, or equivalent consensual

26  security interest is created or retained against the consumer's

27  dwelling to finance the acquisition or initial construction of

28  such dwelling." 15 U.S.C. § 1602.

20

1  Plaintiff argues that the transaction at issue was neither made
2  to acquire or to construct Plaintiffs' residence, barring this
3  exemption.  However, Plaintiffs have failed to assert the true
4  nature of the loan at issue, forcing the Court to guess its
5  purpose.  This Court will not take part in guessing games and
6  does not accept Plaintiffs' conclusory allegations.

7      As to the refinancing exemption, Plaintiffs again claim the
8  transaction at hand falls outside of the exemption.  However, as
9  explained above, this Court cannot ascertain the nature of the
10 loan.  Because the Court cannot decipher from the pleading what
11 the nature of the loan was, and because Plaintiffs have not
12 sufficiently alleged that the NRC must apply or that the TILA
13 exemptions do not apply, Plaintiffs' claim for violation of TILA
14 is dismissed.

15
16                            **CONCLUSION**
17

18      As a matter of law, and for the reasons set forth above,
19 Defendants' Motion to Dismiss is GRANTED in part and DENIED in
20 part.

21      Defendants' Motion to Dismiss is GRANTED without leave to
22 amend with respect to Plaintiffs' Rosenthal Fair Debt Collection
23 Practice Act cause of action.
24 ///
25 ///
26 ///
27 ///
28 ///

1    Defendants' Motion to Dismiss is also GRANTED with respect

2  to Plaintiffs' cause of action for breach of written and oral

3  contract; breach of good faith and fair dealing; violations of

4  the Rosenthal Fair Debt Collection Practices Act; violations of

5  California's Unfair Competition Law; and Violations of Truth-In-

6  Lending Act and Regulation Z.  Plaintiffs are given final leave

7  to amend for these causes of action.  Any such amendment must be

8  filed within twenty (20) days of the date this Order is

9  electronically filed.  No further amendments will be permitted

10  thereafter.

11    Defendants' Motion to Dismiss is DENIED as to Plaintiffs'

12  promissory estoppel cause of action.

13    IT IS SO ORDERED.

14

Dated: December 5, 2011

15

16

17                                MORRISON C. ENGLAND, JR.
                                  UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

27

28