UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSTY KROUSE and BRENNA KROUSE,<br><br>        Plaintiffs,<br><br>  v.<br><br>BAC HOME LOANS SERVICING, LP; BANK OF AMERICA N.A.; and DOES 1 through 10, inclusive,<br><br>        Defendants. | No. 2:10-cv-03309-MCE-EFB<br><br>MEMORANDUM AND ORDER[1] |

----oo0oo----

Presently before the Court is Defendants' Motion to Dismiss ("MTD") Plaintiffs' Third Amended Complaint ("TAC") (ECF No. 30) for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

[2] Unless otherwise noted, all further references to Rule or Rules are to the Federal Rules of Civil Procedure.

1

## BACKGROUND[3]

On December 19, 2007, Plaintiffs procured a $417,000 loan for the real property located at 6950 Elm Tree Lane, Orangevale, California, 95662, which was secured by a Promissory Note and a Deed of Trust (which was recorded on December 26, 2007). (See MTD at 3, MTD, EXs. A & B (Note & Deed).)[4]  At that time Plaintiffs were provided with the Truth in Lending Act disclosures, explaining the terms of their loan. (See, id. at Ex. C.)

///
///

---

[3] The factual assertions in this section are based on the allegations in Plaintiffs' TAC, except where otherwise noted. For the purposes of this Motion, the Court accepts Plaintiffs' facts as true and makes all inferences in the light most favorable to Plaintiffs.

[4] Pursuant to Federal Rules of Evidence 201(b) (authorizing judicial notice of adjudicative facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned'), Defendants request the Court take judicial notice of several documents. (Request for Judicial Notice ("RJN") (ECF No. 30, Att. 1 and Exs A-E.) Specifically, Defendants ask the Court to take judicial notice of the: (1) Promissory Note, dated December 17, 2007, and signed by Plaintiffs (RJN, Att. 2, Ex. A); (2) Deed of Trust, dated December 17, 2007, signed by Plaintiffs and recorded in the official records of Sacramento County, Book 20071226, Page 1098, on December 26, 2007 (Id., Ex. B); (3) Federal Truth In Lending Disclosure Statement, dated December 17, 2007 (Id., Ex C); (4) Notice of Right to Cancel, dated December 17, 2007, and signed by Plaintiffs on December 19, 2007. (Id. at Ex. D); and (5) the Court's Order regarding Defendants' Motion to Dismiss the Second Amended Complaint (Id. at Ex. E; ECF No. 28). Defendants' requests are unopposed and are the proper subject of judicial notice. See, e.g., Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1040 (E.D. Cal. 2009); Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public record). Accordingly, Defendants' Request for Judicial Notice, (ECF No. 13, Att. 1.), is granted.

Also on December 19, Plaintiffs received and signed two Notices of the Right to Cancel ("NRC"), which set out the time reserved for Plaintiffs to rescind the loan agreement.[5] (Id. at Ex. D)

In early 2009, Plaintiffs found it difficult to make their mortgage payments. As a result, in April 2009, Plaintiffs applied for a loan modification through the Home Affordable Modification Program ("HAMP"), serviced by Bank of America N.A. ("BoA"). (TAC at ¶¶ 70-74.)

In July 2009, after reviewing Plaintiffs' financial information, BoA informed Plaintiffs during the course of a telephone conversation that they had conditionally met the eligibility requirements to qualify for a permanent loan modification under the HAMP. (Id. at ¶ 74.) Plaintiffs claim that BoA also explained that if the Plaintiffs made three timely trial period plan ("TPP") payments of $2,345, then BoA would provide a permanent loan modification. (Id.)

On August 23, 2009, Plaintiffs were approved for and received TPP documents, which they signed. (TAC at ¶ 75; TAC, Ex. 7 ("TPP".) The TPP documents explained how Plaintiffs were required to make three timely TPP payments for the months of August, October, and November 2009.[6] (Id. at ¶ 76.) Plaintiffs state that they timely made the three TPP payments and continued to make the TPP payments after November 2009. (Id. at §§ 77-79.)

///

---

[5] Plaintiffs now claim that the dates written on the NRC were placed on the form sometime after they signed it, and the dates were never provided to the Plaintiffs. (TAC at 26.)

[6] It is unclear why September was not included.

3

In December 2009, Plaintiffs contacted Defendants and were told they were "still under review" and must continue making their mortgage payments. (Id. at ¶ 81.) Plaintiffs then received a letter dated December 12, 2009, from BoA requesting their tax returns and the most recent profit and loss statement. (Id. at ¶ 82.) Plaintiffs allege the tax returns and similar financial information had previously been submitted to Defendants prior to starting the TPP. (Id.)

In January and February 2010, Plaintiffs received letters from BoA requesting tax returns, documentation stating Plaintiffs were not subject to homeowners' association dues, and documentation showing completion of credit counseling. (Id. at ¶¶ 83, 85.) Again, Plaintiffs claim these documents were already in BoA's custody, but they produced the documents. (Id.)

During the latter part of January 2010, Plaintiffs received a letter from BoA claiming Plaintiffs had not made all necessary TPP payments. (Id. at ¶ 84.) Plaintiffs thereafter requested and received a copy of their loan history from Defendants, which, they assert, indicated that Plaintiffs made every payment since entering the TPP trial period. (Id.)

In February 2010, Plaintiffs called to inquire as to the status of the loan modification, and the purpose of the document request, but did not receive a conclusive answer. (Id. at ¶ 86.)

///
///
///
///
///

4

1      Between February and June 2010, Plaintiffs continued to make
2 their TPP payments and communicated with BoA on seven separate
3 occasions. (Id. at ¶¶ 85-90.)  By phone and in writing, BoA
4 repeatedly assured Plaintiffs that they had satisfied the HAMP
5 requirements and had been approved for the permanent loan
6 modification and that the paperwork would be sent to them in the
7 near future. (Id.)  Plaintiffs were instructed to continue making
8 their mortgage payments while awaiting the loan modification
9 paperwork. (Id. at ¶ 88.)  However, the promised paperwork never
10 arrived. (Id. at ¶ 90.)

11      Then, on June 25, 2010, Plaintiffs received a letter from
12 BoA informing them that they had not qualified for a HAMP
13 modification due to a negative net present value test result.
14 (Id. at ¶ 91.)  Four days later, on June 29, Plaintiffs contacted
15 BoA by telephone. (Id.)  According to Plaintiffs, the BoA
16 representative "confirmed" Plaintiffs' loan modification had been
17 approved in February of 2009. (Id.)

18      Plaintiffs never received the final loan modification
19 documents. (Id.)  Instead, BoA allegedly initiated a collection
20 process, which Plaintiffs contend caused them severe emotional
21 distress and other damages. (Id. at ¶¶ 92-102.)

22      In their TAC, Plaintiffs raise claims against all Defendants
23 for: (1) breach of written contract, (2) breach of oral contract;
24 (3) breach of implied covenant of good faith and fair dealing,
25 (4) promissory estoppel, (5) violations of California's Unfair
26 Competition Law, and (6) violations of the Truth-In-Law Lending
27 Act ("TILA") codified at 12 C.F.R. Part 226 ("Regulation Z").
28 (See, TAC, ECF No. 29.)

5

In its prior Order, the Court granted, with final leave to amend, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") as to all but Plaintiffs' promissory estoppel cause of action. (<u>See</u> ECF No. 28.)

## STANDARD

### A. Motion to Dismiss

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 554-55 (2007) (internal citations and quotations omitted).

Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (internal citations and quotations omitted). A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level.

///
///

6

1  Id. (citing 5 C. Wright & A. Miller, Federal Practice and
2  Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must
3  contain something more. . . than . . . a statement of facts that
4  merely creates a suspicion [of] a legally cognizable right of
5  action")).
6      Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather
7  than a blanket assertion of entitlement to relief.  Without some
8  factual allegation in the complaint, it is hard to see how a
9  claimant could satisfy the requirements of providing not only
10 'fair notice' of the nature of the claim, but also 'grounds' on
11 which the claim rests." Twombly, 550 U.S. at 555, n.3 (internal
12 citations omitted).  A pleading must contain "only enough facts
13 to state a claim to relief that is plausible on its face." Id.
14 at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009).
15 If the "plaintiffs . . . have not nudged their claims across the
16 line from conceivable to plausible, their complaint must be
17 dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680.
18     A court granting a motion to dismiss a complaint must then
19 decide whether to grant leave to amend.  Rule 15(a) empowers the
20 court to freely grant leave to amend when there is no "undue
21 delay, bad faith[,] dilatory motive on the part of the movant, .
22 . . undue prejudice to the opposing party by virtue of . . . the
23 amendment, [or] futility of the amendment. . . ." Foman v.
24 Davis, 371 U.S. 178, 182 (1962).  Leave to amend is generally
25 denied when it is clear the deficiencies of the complaint cannot
26 be cured by amendment.
27 ///
28 ///

7

DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Balistieri v. Pacifica Police Dept., 901 F. 2d 696, 699 (9th Cir. 1990) ("A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations omitted).

## CLAIMS AND ANALYSIS

### A. Breach of Contract, Breach of Duty of Good Faith and Fair Dealing, Promissory Estoppel, California Unfair Competition Law

Plaintiffs' factual allegations and causes of action for (1) breach of written contract; (2) breach of oral contract; (3) breach of good faith and fair dealing; (4) promissory estoppel; and (5) violations of California's Unfair Competition Law appear to be essentially identical to the facts and claims they raised in the Second Amended Complaint. (Cf. ECF Nos. 20 ("SAC") and 29 ("TAC").)  With the exception of Plaintiffs' promissory estoppel claim, the Court previously dismissed each of these claims with final leave to amend.  (ECF No. 28)

Because Plaintiffs have chosen not to materially amend their claims in their TAC, Defendants' Motion to Dismiss is granted without leave to amend as to Plaintiffs' causes of action for (1) breach of written contract; (2) breach of oral contract; (3) breach of good faith and fair dealing; and (4) violations of California's Unfair Competition, for the reasons set forth in the Court's prior Order.  (Id.)

///

Because the Court previously found Plaintiffs had stated a cause of action for promissory estoppel, and because this claim is essentially unaltered in the TAC, Defendants' motion is denied as to that claim for the reasons set forth in the Court's prior Order. (Id.) However, because Plaintiffs added some detail to their Sixth Cause of Action, related to TILA and Regulation Z, the Court will briefly discuss that claim.

### B. Truth In Lending Act and Regulation Z

TILA mandates that borrowers be given three business days to rescind, without penalty, a consumer loan that uses their principle dwelling as security. 15 U.S.C. § 1635(a). If the lender does not comply with TILA's disclosure requirements, the rescission period is extended to three years. 15 U.S.C. § 1635(f). The disclosure requirements at issue here are: (1) that creditors must provide each borrower two NRCs within three days of the transactions' execution, 12 C.F.R. § 226.15(b); and (2) that the NRC identify when the cancellation period expires. Id.

As they did in their Second Amended Complaint, Plaintiffs again generally allege BoA violated TILA by "failing to deliver to Plaintiffs two copies of the notice of right to cancel ("NRC") that clearly and conspicuously disclosed the date the rescission period expired." (TAC ¶ 150.) Plaintiffs claim that "the NRCs that Plaintiffs received were materially defective in that they did not indicate the final date to rescind the loan." (Id.)
///

9

1  Plaintiffs argue, that as a result of receiving defective forms,
2  they have the right to rescind their initial deed of trust
3  agreement.  (Id. at ¶¶ 151-162.)  In their Second Amended
4  Complaint, Plaintiffs relied on the unsigned version of the NRCs
5  (see ECF No. 20, Ex. 10).  Defendants then responded by directing
6  the Court's attention to the signed and dated versions of the
7  NRCs (see ECF No. 21, Ex. D)

8      Plaintiffs now contend that the notices of right to cancel
9  that Defendants sent to them were materially defective because
10 they didn't include the final date to rescind the loan.  (TAC
11 ¶ 150; see also TAC, Ex. 10 (blank NRCs.)  They argue that the
12 completed NRCs (attached to the TAC at Ex. 11 and to Defendants'
13 MTD as Ex D) are insufficient because they were not provided to
14 Defendants as part of the litigation until July of 2011, and
15 because "[t]he dates handwritten on Exhibit 11 were placed on
16 that notice sometime after Plaintiffs signed the notice and were
17 never provided to Plaintiffs."  (TAC at ¶ 151).

18      Defendants move to dismiss on the basis that: (1) Plaintiffs
19 did receive a proper and conspicuously disclosed NRC (MTD at 16-
20 17, 19-20); (2) Plaintiffs' claims are time-barred (Id. at 17);
21 and Plaintiffs failed to properly allege tender (Id. at 17-19).
22 The Court previously dismissed this claim on the basis that
23 Plaintiffs' claims were too conclusory and generally violated
24 Rule 8(a)s pleading requirements.  (See ECF No. 28 at pages 19-
25 21.)  With respect to Plaintiffs' contentions regarding the date
26 of the NRCs, Defendants respond that on December 19, 2007,
27 Plaintiffs received and signed an NRC identifying both the date
28 of the transaction and the period of rescission. (See RJN, Ex D.)

10

The completed NRC states, "You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS..." of whichever of the following events occurs last:" (1) "the date of the transaction" - handwritten in is the date "12/19/07" – (2) "the date you received your Truth in Lending Disclosures; or (3) the date you received [the NRC]." (See id.)  The top of the page indicates that it was faxed from Bank of America on December 19, 2007 and both Plaintiffs signed and dated the document in handwriting with a December 19, 2007 date.  (Id.)  Thus, there is enough information on the form to have given Plaintiffs notice of their three-day window to cancel the transaction from December 19, 2007, the date they signed the NRC.[7]  Plaintiffs' contentions about when the dates were added are inconsistent with the handwritten information on the page, are implausible, and do not "raise a right to relief above the speculative level."  Twombly, 550 U.S. 544, 554-55.

It is simply not plausible that Plaintiffs were not fully aware, and on notice, of their right to rescind within three days of receiving the NRC.  They did not exercise this right, and therefore have no right under TILA and Regulation Z to rescind the contract nearly three years later.

///

---

[7] Plaintiffs do not explicitly claim fraud, and their assertion that the dates were added later is not supported by any further facts.  To the extent Plaintiffs are alleging fraud on Defendants' part, their claim fails to satisfy either the heightened pleading requirements of Rule 9(b) or Rule 8(a)s more lenient standard.  There is simply no basis to conclude that the dates were added later.  Where Plaintiffs, as here, "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Twombly, 550 U.S. at 570.

11

Therefore, contrary to their claims, Plaintiffs did receive proper notification of a notice to cancel and the period of rescission and there is no claim or evidence that they exercised their right to cancel.

Furthermore, Plaintiffs' contention that they are "able and willing to repay any amounts due Defendant, after Defendant has returned all amounts due to Plaintiffs pursuant to a payment plan authorized by the Court or in a lump sum with 120 days of an entry of order granting Plaintiffs' rescission," (see TAC ¶ 162), is insufficient to satisfy TILA's tender requirement.

Under California law, a plaintiff challenging a foreclosure sale or any cause of action "implicitly integrated" with the sale is required to make a valid and viable tender of payment of the debt. Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 578-79 (1984); Karlsen v. Am. Savs. & Loan Ass'n, 15 Cal. App. 3d 112, 121 (1971). An offer to tender is "an offer to pay the full amount of the debt for which the property was security." Arnolds Mgmt. Corp., 158 Cal. App.3d at 578. Here, Plaintiffs' tender offer is essentially conditioned on them winning the lawsuit, which fails both because that does not appear to be a present offer to tender, nor does such an offer appear to be particularly likely given that the Court has dismissed all but one of Plaintiffs' claims after giving them multiple opportunities to amend their complaint. Considering the facts and circumstances present, this Court finds that Plaintiffs have not sufficiently alleged tender in this case.

///
///

12

So, for the reasons set forth in its prior Order dismissing Plaintiffs' TILA and Regulation Z cause of action (see ECF No. 28), as well as for the additional reasons set forth in the present Order, Defendants' motion to dismiss Plaintiffs' Sixth Cause of Action related to TILA and Regulation Z is GRANTED without leave to amend.

## CONCLUSION

As a matter of law, and for the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint is GRANTED in part and DENIED in part.  Defendants' Motion to Dismiss is GRANTED without leave to amend as to Plaintiffs' causes of action for (1) breach of written contract; (2) breach of oral contract; (3) breach of good faith and fair dealing; (4) violations of California's Unfair Competition Law; and (5) Violations of Truth-In-Lending Act and Regulation Z. No further amendments will be permitted.  Defendants' Motion to Dismiss is DENIED as to Plaintiffs' promissory estoppel cause of action.

///
///
///
///
///
///
///
///
///

1    Plaintiffs shall file an amended Complaint within twenty
2 (20) days of the date this Order is filed electronically that is
3 limited to the Promissory Estoppel cause of action.  No new facts
4 or claims are permitted.
5    IT IS SO ORDERED.

Dated: July 6, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

14